UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:09CR137 ERW (AGF) |
| FERNANDEZ RAMIREZ WALKER, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motions filed by Defendant, Fernandez Ramirez Walker. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion to suppress evidence and statements. (Doc. No. 17). An evidentiary hearing was held on April 22, 2009. The government was represented by Assistant United States Attorney Allison H. Behrens. Defendant was present and represented by his attorney, Assistant Federal Public Defender Lucille G. Liggett. At the hearing, the government presented the testimony of Officer Steve Schwerb, who has been employed with the St. Louis Metropolitan Police Department (SLMPD) for approximately 12 years.[1] The witness was cross-examined extensively by defense counsel. The parties were given leave to file post-

---

[1] Defendant also sought to have Donetta Perry testify on his behalf. Both parties agreed that it would be appropriate to appoint counsel to advise Ms. Perry of her rights, and after meeting with counsel, she elected to exercise her right to remain silent and declined to testify.

hearing memoranda with respect to an evidentiary issue, after which the matter was taken under advisement. Trial is scheduled for June 3, 2009. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In 2008, Officer Steve Schwerb was assigned to the tactical deployment unit of the SLMPD, assigned to conduct investigations. In November, 2008, he was contacted by a reliable source who told him about an individual referred to as "Goldie" who was selling narcotics from the address of 3113 Chippewa, Apartment E (the "Residence"), in St. Louis, Missouri. The subject was described as a black male, 5'8" tall, with medium build, and braids. No further name or photograph of "Goldie" was provided by the informant.

Based on the information received, on the evening of November 18, 2008, Officer Schwerb and his partner began to conduct surveillance of the Residence. They were parked on Chippewa in a covert vehicle. They were wearing their raid jackets, that identified them as police on the front and back, and their raid gear. The Residence is part of a multi-unit apartment building, that runs from the street toward the alley. Each apartment has its own outside door, and the doors face west (perpendicular to Chippewa). See Govt. Ex. 4. The door to unit E was near the street, and from their surveillance point, the officers were able to observe the front door to the Residence with binoculars.

Almost immediately after they began their surveillance, the officers observed

2

what they believed was a hand-to-hand drug transaction at the front door to the Residence. A woman walked up to the door to Apartment E, handed currency to an individual, later identified as Defendant Walker, and the officers observed Defendant count the currency. Defendant then closed the door, came back, and then handed an object (that the officers were unable to see) to the woman. Although it was dark outside, the officers were able to observe what happened from the inside light that illuminated the area when Defendant opened the door. Based on his experience, Officer Schwerb believed what he had witnessed was a narcotics transaction.

The officers contacted other members of their unit, and provided a description of the woman and the direction in which she was traveling. Other officers arrived, located the woman, placed her under arrest, and took her into custody. The woman, who was named Ruby, advised the arresting officers that she had just bought drugs from "Goldie" at an apartment up the street, and said that they "should go get him." Because she also advised the officers that she had a communicable disease, she was released from custody.

While this arrest was taking place, Officer Schwerb and his partner continued their surveillance. A few minutes after the first transaction, the officers observed a second individual pull up in a grey Mercury Sable. That individual approached the Residence and also conducted what the officers believed was a hand-to-hand transaction with Defendant. During this transaction, Officer Schwerb was able to observe Defendant, but could not see what the individual was handing to him. After this individual left, the

officers broadcast information regarding the car, but the car was gone before any other officers could locate it.

One to two minutes later, the officers observed Defendant and a woman, later identified as Defendant's sister, Donetta Perry, leave the Residence. Defendant walked in the direction of the officers' car, and crossed the street to the sidewalk near where the officers were parked. Ms. Perry was walking about 15 - 20 feet behind him. Defendant matched the description that had been provided by the confidential source. The officers got out of their vehicle to speak to Defendant and announced they were police. The street was well lit by street lights, and the officers were also using their flashlights. As Defendant approached, Officer Schwerb saw Defendant put his hand in his pocket, quickly remove it, and toss something about 10 - 15 feet behind him.

The officers placed Defendant under arrest, put him in handcuffs, and Officer Schwerb advised Defendant of his <u>Miranda</u> rights from a card that he keeps with him. At the hearing, the witness read the rights into the record as he had read them to Defendant. Defendant did not appear to be under the influence of drugs or narcotics, or to have any mental infirmity, and Officer Schwerb did not have any question regarding Defendant's ability to understand what was being said to him. After he was advised of his rights, Defendant stated something to the effect of: "I'm caught. What can I say? Can we work something out?" The statement by Defendant was not in response to any questioning by the officers, and no threats or promises were made to induce Defendant's statement.

As soon as Defendant was arrested and secured, Officer Schwerb retrieved the

item he had seen Defendant discard. It was a clear bag containing what appeared to be crack cocaine, and was later so determined. The officers searched Defendant incident to his arrest and located $652 in currency. After he was searched, the officers asked Defendant who lived in the apartment, and Defendant responded that it was his sister Donetta's house, and he nodded toward the woman who had left the Residence with him. The officers had other members of the unit stop Ms. Perry and obtain her pedigree information, as a witness to the case. The officers asked Defendant if he had any more narcotics, and he responded, yes, there was a little more inside, but stated that most of the drugs were on him and that he had planned to hustle it at the bus stop.

    The officers asked Defendant if they could search the Residence, and he indicated that he had no problem with the request, but that the officers would have to ask his sister, as it was her place. The officers believed Defendant was being truthful when he identified the Residence as his sister's apartment, and they had no reason at that time to believe it was not her apartment. Officer Schwerb and his partner therefore approached Ms. Perry and asked for consent to search the Residence. She stated the apartment was hers and agreed to the search. Officer Schwerb retrieved a consent to search form from his vehicle. He presented it to Ms. Perry and read and explained the form to her. She looked at the form, and then signed it. Govt. Ex. 1. She did not ask any questions or indicate that she did not understand the form. No threats or promises were made to induce Ms. Perry to sign the consent to search. The officers did not have their weapons drawn, and did not exert any force to obtain the consent. Above the signature line, the

5

consent to search form states:

> I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form.
>
> I further state that no promises, threats, force or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form.

Id. The form reflects a time of 8:25 p.m. On the back, Ms. Perry is listed as 26 years old.

Defendant was detained in one of the police vehicles outside while Officer Schwerb, his partner, and their sergeant, Sgt. Menendez, searched the Residence. Ms. Perry went to the Residence with the officers and let them in. Inside the Residence they encountered another woman, Olivia Walker, who identified herself as a sister of Defendant's. In the kitchen, the officers located some crack cocaine on the table, as well as bags with powder and a digital scale. The apartment had only one bedroom. In the bedroom, the officers located other items, including three bags of marijuana, a grinder with a tan powder they believed was heroin, some capsules, a bottle of Dormin, and a glass plate with residue. On the bedroom dresser, there were pieces of mail, addressed to Defendant. They also located other items referencing Defendant in the bedroom, including a casino card with Defendant's name, that also had residue on it. The officers did not see anything in the bedroom to indicate that a female occupied the room. The only clothing appeared to be men's clothing, the size of which appeared to match Defendant.

After the search was complete, the officers spoke with Ms. Perry and Ms. Walker.

6

Ms. Perry advised the officers that Defendant slept in the bedroom and that she slept on the couch, an arrangement she allowed because Defendant paid the bills. Ms. Walker stated that she was Defendant's sister, and that she was just visiting.

The officers approached Defendant, who was still in the car outside, and placed him under arrest for the additional charges. Officer Schwerb reminded Defendant of his rights, and he said he understood.[2] Defendant stated to the officers, "I'm good for all of it, just don't involve my sisters." The officers offered Defendant the opportunity to put his statements in writing, and he declined.

## CONCLUSIONS OF LAW

### A. Motion in Limine

At the hearing, the government made an oral motion in limine to exclude evidence of allegations of police misconduct related to Officer Schwerb. In its post-hearing memorandum, the government stated that the alleged misconduct related to an incident in the Fall of 2006, in which certain police officers with SLMPD were accused of providing individuals with Cardinal baseball tickets for the 2006 post-season games, that had been seized from ticket scalpers, and thereafter returning the tickets to evidence. On April 18, 2007, the Board of Police Commissioners (the "Commissions") suspended and demoted seven police officers and one sergeant based on these accusations, although the investigation by the Internal Affairs department was not yet complete. After the officers

---

[2] The exact manner in which Defendant was "reminded" of his rights was not discussed at the hearing.

accepted the disciplinary decision of the Commissioners, the investigation was terminated, and the Circuit Attorney did not elect to pursue charges. Officer Schwerb was one of these officers. The Court notes that at the time, the matter received a fair amount of publicity.

At the hearing, consistent with the procedure adopted in another case in this district in which the same issue arose, the parties agreed that they would reach a stipulation as to what the testimony would be, and would submit post-hearing briefs setting forth the stipulation and addressing the issue of whether the Court should consider the stipulated evidence. Although the parties submitted post-hearing briefs regarding this matter, they did not provide any stipulation as to what the testimony would be. To the extent Defendant's post-hearing memorandum requests leave "to cross-examine Officer Schwerb about his participation," the request is denied as inconsistent with the process the parties agreed to at the hearing. For purposes of this Report and Recommendation, the Court will assume that the evidence would have been as represented above, and will give the evidence the weight the Court deems appropriate. Of course, were the motion presented in the context of a jury trial, the Court might determine otherwise, and notes that the District Judges in this district who have thus far considered this evidence in the context of a jury trial, have excluded evidence of this matter.

### B. Arrest of Defendant

As an initial matter, the Court notes that the officers did not need probable cause to approach Defendant and speak to him. Not all personal encounters between police and

8

citizens involve "seizures" under the Fourth Amendment. See Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968). Consensual encounters between police and private citizens do not implicate the Fourth Amendment. Florida v. Bostick, 501 U.S. 429, 434 (1991); Florida v. Royer, 460 U.S. 491, 497 (1983); United States v. Dupree, 202 F.3d 1046, 1049 (8th Cir. 2000). "A Fourth Amendment 'seizure' does not occur merely because a police officer requests permission to search an area or poses other questions to a citizen." United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001); United States v. Woods, 213 F.3d 1021, 1023 (8th Cir. 2000) (citing United States v. Guerrero-Hernandez, 95 F.3d 983, 986 (10th Cir. 1996) (consensual encounter does not become custodial simply because individual being questioned is the target of an investigation)); United States v. Ward, 23 F.3d 1303, 1305-06 (8th Cir. 1994). Such encounters do not require any degree of suspicion. Bostick, 501 U.S. at 435; Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984). Here, the interaction with Defendant began as a consensual encounter, and the attempted consensual encounter did not become custodial simply because Defendant was the target of an investigation. Woods, 213 F.3d at 1022.

As they approached and announced their identity, Defendant discarded an item that was in his hand, and he was thereafter immediately placed under arrest. Defendant contends that the officers lacked probable cause for the arrest and that their arrest of Defendant without a warrant was therefore unlawful.

An arrest is lawful even if made without a warrant, if the arrest is made with probable cause. See United States v. Watson, 423 U.S. 411, 417 (1976). Probable cause

exists "when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001)); accord United States v. Travis, 993 F.2d 1316, 1323 (8th Cir. 1993) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Officers are not required to rule out all innocent explanations, nor are they required to be able to prove a case beyond a reasonable doubt to effect a warrantless arrest. Maryland v. Pringle, 540 U.S. 366, 371 (2003); Illinois v. Gates, 462 U.S. 213, 235 (1983). The test is an objective one, and does not turn on the subjective belief or intent of the police officers. United States v. Sherrill, 27 F.3d 344, 346-47 (8th Cir. 1994). Moreover, in making this determination the court may consider the collective knowledge of all of the law enforcement officers if, as here, there is some degree of communication. United States v. Morales, 238 F.3d 952, 954 (8th Cir. 2001).

Here, the officers had previously received information from a reliable informant who stated that an individual named "Goldie" was selling narcotics at the Residence. The officers corroborated the information received through their own surveillance, in which they observed Defendant – who matched the description provided by the informant – engage in what appeared to be two hand-to-hand transactions. The individual involved in the first transaction was arrested, and she confirmed that she had just purchased narcotics from "Goldie." And upon approach of Defendant, he attempted to discard an item.

Based on the totality of the facts, the officers had probable cause to effect a warrrantless arrest of Defendant.  See United States v. Anderson, 339 F.3d 720, 723 (8th Cir. 2003) (officers had probable cause to arrest defendant when police received precise descriptions from multiple anonymous callers, who provided matching descriptions, that truck driver had been walking along highway with a gun and threatening another truck driver, and driver attempted to drive off when officers attempted to stop him); United States v. Jones, 204 F.3d 541, 543 (4th Cir. 2000) (finding that after viewing apparent drug transaction in area known for high drug traffic, officers had probable cause to arrest defendant who fled); United States v. Willis, 967 F.2d 1220, 1223 (8th Cir. 1992) (police officer who had a reasonable suspicion that "criminal activity might be afoot" had probable cause to arrest defendant who dropped bag and fled).

Inasmuch as the officers had probable cause for the arrest, Defendant's further argument that his statements must be suppressed as "the fruit of the illegal arrest," also fails.

**C. Seizure of the Baggie**

The officers were also justified in seizing the baggie that Defendant discarded prior to his arrest.  The warrantless search and seizure of abandoned property is not unreasonable and does not violate the Fourth Amendment.  Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (holding that officers may seize package where defendant dropped package and fled); United States v. Hoey, 983 F.2d 890, 892 (8th Cir. 1993) (abandoned apartment).  "The issue is

11

not abandonment in the strict property right sense, but rather, whether Defendant in leaving the property has relinquished [his or] her reasonable expectation of privacy so that the search and seizure is valid." Hoey, 983 F.2d at 892.

While the abandonment cannot be the product of unlawful police conduct, "[t]he existence of a police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." Segars, 31 F.3d at 658 (quoting, United States v. Jones, 707 F.2d 1169, 1172 (10th Cir. 1983)). See, California v. Hodari D., 499 U.S. 621, 626 (1991) (defendant fled on approach of police and threw down drugs while fleeing); United States v. Liu, 180 F.3d 957, 960-962 (8th Cir. 1999) (defendant left train after police questioning, leaving behind luggage); Willis, 967 F.2d at 1223 (defendant abandoned shopping bag by dropping it in parking lot, with police in pursuit). Here the officers had not engaged in any unlawful conduct by approaching Defendant and identifying themselves, and as such, they were justified in seizing the package. See Hodari D., 499 U.S. at 629 (cocaine abandoned while the defendant was fleeing not the fruit of a seizure and therefore not subject to suppression).

In any event, the incriminating nature of the item was immediately apparent, and the officers were therefore justified in seizing the baggie under the "plain view doctrine." See United States v. DeBuse, 289 F.3d 1072, 1074-75 (8th Cir. 2002); United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997).

### D. Search Incident to Arrest

The officers were also justified in searching Defendant at the time of his arrest.

United States v. Robinson, 414 U.S. 218, 224 (1973). A custodial arrest of a suspect based upon probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to arrest requires no probable cause or reasonable suspicion. Id. at 235. After placing Defendant under arrest, the officers were entitled to search Defendant incident to his arrest, and neither the cash nor any other evidence seized from his person is subject to suppression. See New York v. Belton, 453 U.S. 454, 461 (1981); Robinson, 414 U.S. at 224; United States v. Pratt, 355 F.3d 1119, 1121, 1124 (8th Cir. 2004); United States v. Lewis, 183 F.3d 791, 793-94 (8th Cir. 1999).

### E. Consent Search of Apartment

The officers were also lawfully entitled to search the apartment based on the consent they received from both Donnetta Perry and Defendant. It is the prosecution's burden to prove by a preponderance of the evidence that a consent to search was freely given. United States v. White, 81 F.3d 775, 780 (8th Cir. 1996); United States v. Miller, 20 F.3d 926, 930 (8th Cir. 1994). A consent is voluntary if it is the product of free choice, the individual's will is not overborne, and the consent is not given under coercion or duress. In determining whether the prosecution has met its burden, courts look to both the characteristics of the person giving the consent and the details of the environment in which the consent was given. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). Voluntariness is a fact question to be determined from the totality of the circumstances present. Schneckloth, 412 U.S. at 226-227; United States v. Matlock, 415 U.S. 164 (1974). The factors to be considered in determining whether consent is

voluntary include: (1) the individual's age; (2) the individual's general intelligence and education; (3) whether the individual was under the influence of drugs or alcohol; (4) whether the individual was informed of his or her Miranda rights prior to the consent; and (5) whether the individual had experienced prior arrests so that he or she was aware of the protections the legal system affords to suspected criminals. United States v. Urbina, 431 F.3d 305, 309 (8th Cir. 2005); accord United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 2001); Chaidez, 906 F.2d at 381. Among the factors to be considered in examining the environment surrounding the consent, courts examine: the length of time a person is detained and questioned; whether the person was threatened, physically intimidated, or punished by the police; whether the person relied upon promises or misrepresentations made by the police; whether the person was in custody; whether the consent occurred in a public or secluded location; and whether the person objected to the search or stood silently by while the search occurred. United States v. Smith, 260 F.3d 922, 924 (8th Cir. 2001); Chaidez, 906 F.2d at 381. The foregoing factors are not to be applied mechanically, and no single factor is dispositive. Schneckloth, 412 U.S. at 226-27; Chaidez, 906 F.2d at 381.

 Here Ms. Perry gave the officers consent to search the Residence. At the time she gave consent, she was a 26 year old adult. She did not appear to be under the influence of drugs or alcohol and appeared to understand what was going on. She was not under arrest at the time and had no reason to believe that she, personally, was the target of any investigation. At the time there were only two officers at the scene, neither of them

14

displayed their firearms, and no threats or promises were made. The officers presented her with a consent to search form, which clearly advised her that she had a right to refuse to consent to the search and to refuse to sign the form. Govt. Ex. 1. She also acknowledged by signing the form that "No promises, force or physical or mental coercion of any kind whatsoever" was used to obtain her consent to the search. Id. Under all of these facts and circumstances, the Court finds that Ms. Perry's consent to search was in fact voluntary.

Although Defendant asserts in his written motion that Ms. Perry did not have authority to consent to the search of the apartment because she was not the lessee and did not live there, there was no evidence presented in support of either factual assertion. Rather, the only evidence was that it was her apartment. Both Ms. Perry and Defendant stated that it was her apartment; she signed the consent to search without ever suggesting she lacked authority; she let the officers into the apartment; and she advised the police that she slept on the couch and allowed Defendant to sleep in the bedroom because he paid the bills.

Valid consent to search may be given by a party "who possessed a common authority over or other significant relationship to the premises or effects sought to be inspected." Matlock, 415 U.S. at 171. A person who occupies a motel room or home with another possesses the authority to consent to a search. See United States v. Wright, 971 F.2d 176, 180 (8th Cir. 1992); accord, United States v. Richard, 994 F.2d 244, 250 (5th Cir. 1993) (co-occupant of a motel room had authority to consent to a search of a

room she had been staying in for several days); United States v. Wade, 740 F.2d 625, 629 (8th Cir. 1984) (driver of a van who contributed to its mortgage payments and maintenance, had her own set of keys and kept some of her property in the van, had authority to consent to a warrantless search even though she was not the owner of the vehicle). In general, any person who has a reasonable expectation of privacy in the place to be searched, and any person with common authority over the premises or other sufficient relationship to the place or the effects being searched, can give valid consent. Matlock, 415 U.S. at 171. Given that Ms. Perry had common authority over the Residence, she was authorized to provide consent to search.

Even if she did not possess common authority, official reliance on the consent may validate the search if it was reasonable for the law enforcement officers to believe the consenting party had the required relationship to or authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 187-188 (1990); United States v. Alcantar, 271 F.3d 731, 738 (8th Cir. 2001); Iron Wing v. United States, 34 F.3d 662, 665 (8th Cir. 1994). "The relevant inquiry is whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the premises." Matlock, 415 U.S. at 171. The test for measuring the scope of the consent is also one of objective reasonableness: "what would the typical reasonable person have understood by the exchange between the officer and the individual." United States v. Adams, 346 F.3d 1165, 1171 (8th Cir. 2003).

Here it was reasonable for the officers to believe that Ms. Perry had authority to

consent to the search. Moreover, Defendant also provided oral consent to search the apartment, and the officers were authorized to search the premises based on Defendant's consent, as well.

### F. Statements of Defendant

After his arrest, Defendant was advised of his rights under Miranda, and he made several oral statements to the police. His statements are not subject to suppression because they were voluntary statements, made following a knowing and voluntary waiver of his rights.

A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing, and intelligent waiver of Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). The court must examine the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception, and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986). The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Connelly, 479 U.S. at 170; Haynes v. Washington, 373 U.S. 503 (1963). "The requirement that Miranda warnings be given does not, of course,

17

dispense with the voluntariness inquiry." Dickerson v. United States, 530 U.S. 428, 444 (2000). As the Supreme Court has recognized, however, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda, are rare." Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984). See Dickerson, 530 U.S. at 444.

Prior to making any statements, Defendant, who was then 30 years old, was orally advised of his Miranda rights, and acknowledged that he understood his rights. At the time he was advised of his rights, he did not appear to be under the influence of any drugs or alcohol, or impaired in any manner. That Defendant understood his rights is further confirmed by the fact that once the search was complete, he declined to make a written statement. Although Defendant was under arrest and was restrained in handcuffs at the time he made his statements, the statements were made shortly after his arrest, were made in the middle of the evening, and were not the result of any threats, promises or coercion. As such, based on the totality of the circumstances, the Court finds Defendant knowingly and voluntarily waived his rights and made voluntary statements. See United States v. Castro-Higuero, 473 F.3d 880, 886-87 (8th Cir. 2007) (finding Miranda waiver and post-arrest statement made at detention center, at 3:15 a.m., approximately one hour after arrest, to be valid and voluntary where substance of Miranda rights was communicated to defendant through Spanish interpreter, agent was unarmed and in street clothes, and defendant was not restrained).

In addition, the initial statement made at the scene, in which Defendant said he had been "caught," and asked if they could work something out, is also not subject to suppression because it was not made in response to any interrogation. See United States v. Turner, 157 F.3d 552, 556 (8th Cir. 1998) (voluntary statements made by suspect, not in response to interrogation, are not barred, "with or without the giving of Miranda warnings"); see generally Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The same is true with respect to Defendant's later statement, following the search and his arrest on the additional charges, in which he stated that "I'm good for all of it, just don't involve my sisters." See United States v. Lockett, 393 F.3d 834, 838 (8th Cir. 2005) (advising the defendant they were looking for him when he asked why the officers were there and explaining what defendant was suspected of are not the functional equivalent of interrogation); United States v. Barnes, 195 F.3d 1027, 1029 (8th Cir. 1999) (not functional equivalent of interrogation when officer advised defendant he was going to be booked for crime, defendant said he "didn't think so," officer asked what he meant, and defendant made incriminating response); United States v. Hawkins, 102 F.3d 973, 975 (8th Cir. 1996) (no "interrogation" where defendant's statement prompted by discovery of cocaine). As such, Defendant's motion to suppress his statements should also be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the government's Motion in Limine [Doc. #27] be **Granted in part and Denied in part**.

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [Doc. No. 17] be **Denied**.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

                                        _____
                                        AUDREY G. FLEISSIG
                                        United States Magistrate Judge

Dated this 15th day of May, 2009.