UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CR00137 ERW |
| | ) | |
| FERNANDEZ REMIREZ WALKER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States

Magistrate Judge [doc. #28] Audrey G. Fleissig, pursuant to 28 U.S.C. § 636(b)(1). The

Report recommends that Defendant's Motion to Suppress Evidence and Statements [doc. #17] be

denied.[1]  On May 26, 2009, Defendant timely filed objections to the Report and Recommendation

[doc. #28]. The Court concludes that the Magistrate Judge's findings were correct, and therefore

adopts the Magistrate Judge's findings of facts and conclusions of law

**I.      LEGAL STANDARD**

"[W]hen a party objects to the report and recommendation of a magistrate judge

concerning a dispositive matter, '[a] judge of the court shall make a de novo review determination

of those portions of the report or specified proposed findings or recommendations to which

objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28

---

[1] The Report and Recommendation also recommends that the Government's Motion in Limine [doc. #27] be Granted, in part, and Denied, in part. Defendant does not object to this conclusion, and therefore the Court will not address the Magistrate's findings on this Motion.

U.S.C. § 636(b)(1)).[2]  The district court has wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## II.    FINDINGS OF FACT

Officer Steve Schwerb of the St. Louis Metropolitan Police Department was contacted by a reliable source, who told him that a person by the name of "Goldie" was selling crack cocaine and heroin from his apartment at 3113 Chippewa, Apartment E.  The source described "Goldie" as a 5'8" black male of medium build, with braids; however, the source did not provide Goldie's real name or a photograph.  After receiving this information, on November 17, 2008, Officer Schwerb and his partner, Officer Chambers, conducted surveillance of the front door of Apartment E at 3113 Chippewa.  They conducted surveillance from a covert vehicle, and used binoculars.  They were dressed in raid gear, which said "Police" on the front and back, and wore web belts.

Shortly after arriving at the property, the officers observed a female walk up to the door and make a hand-to-hand transaction involving money with a person later identified as the Defendant.  The Defendant met the description of "Goldie" provided by the source.  Based on his experience in law enforcement, Officer Schwerb believed that a narcotics transaction had occurred.  Officer Schwerb contacted other members of his unit and gave a description of the female.  The other officers were able to quickly locate the female and place her under arrest.  The

_____

[2] 28 U.S.C. § 636(b)(1)(B) provides that "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . ."  The statute further provides that each party may file written objects within ten days of being served with a copy of the magistrate judge's report and recommendation.  *Id.* § 636(b)(1).

female told the officers arresting her that she had just bought the narcotics from "Goldie" in the apartment up the street. The female was taken into custody and subsequently released, due to her claim that she had a communicable disease.

Officers Schwerb and Chambers continued to conduct surveillance of Apartment E. They watched an individual pull up in a Mercury Sable and engage in another hand-to-hand transaction with Defendant, although this time they were unable to see if money was exchanged. Again, Officer Schwerb believed that a narcotics transaction had just taken place, based on his personal experience. When the second individual left the property, Officer Schwerb broadcast a description of the Mercury Sable to other members of his unit, but they were unable to locate the vehicle.

Officers Schwerb and Chambers continued their surveillance after seeing the second transaction. Eventually, Defendant and a woman later identified as Donetta Perry walked out of the apartment and toward the covert vehicle. The officers decided to exit the vehicle and speak with Defendant. After exiting the vehicle, they announced that they were police. As they approached Defendant, they observed him place his hand in his pocket and quickly remove it and then saw him make a backward tossing motion while releasing a bag to the ground. The bag was retrieved and later determined to contain crack cocaine.

The officers placed Defendant under arrest and advised him of his Miranda rights, which were read by Officer Schwerb from a card. Defendant indicated that he understood his rights. He did not appear to be under the influence of alcohol or any controlled substance or to be suffering from a mental infirmity. The officers did not notice any behavior that would cause them to be concerned about Defendant's ability to understand his rights. After indicating that he understood

his rights, Defendant stated, "I'm caught, what can I say, can we work something out?" The officers did not use force or threaten Defendant in any way or promise him something to get him to make a statement. The Defendant made the statement voluntarily, not in response to any questioning by the officers.

The officers conducted a search of Defendant's person and found $652.00 in currency. The officers asked Defendant who resided at 3113 Chippewa, Apartment E, and he responded that it was his sister Donetta's house and nodded in the direction Ms. Perry was walking. Officer Schwerb radioed other members of his unit and had them stop Ms. Perry in order to interview her. The officers asked Defendant if there were more drugs in the apartment and he responded that there was a little more inside, but he had most of it on him because he was going to try to hustle it at the bus stop. The officers asked Defendant if they could search the apartment and he responded that he didn't have a problem with it, but they would have to ask his sister because it was her house.

The officers then approached Ms. Perry to ask for her consent to search the apartment. She verbally agreed and then the officers presented her with a written form to sign. They explained the form to her and she appeared to read the form. Officer Schwerb read to Ms. Perry the portion of the form that described her right to refuse to consent to the search. Ms. Perry did not ask any questions and placed her signature on the form. The officers did not threaten or force Ms. Perry to sign the form. They had no reason to question Ms. Perry's authority to consent to the search of the apartment.

The officers then conducted a search of the apartment, while Defendant remained outside in one of the police vehicles. Ms. Perry let the officers into the apartment. Inside, the officers

found: crack cocaine; clear bags with suspected powder cocaine; a digital scale; three bags of marijuana; an electric grinder with tan powder, believed to be heroin; bags of empty capsules; a bottle of Dormin; a glass plate with residue; a casino card bearing Defendant's name with residue; and three pieces of mail addressed to Defendant in the bedroom. The apartment only had one bedroom, but it appeared to Officer Schwerb that a male was residing in the bedroom, because of the male clothing. Ms. Perry told the officers that she slept on the couch and Defendant slept in the bedroom. She also stated that she allowed the narcotics sales to take place because Defendant paid the bills. The officers also talked to Olivia Walker, who was in the apartment when the officers arrived. Ms. Walker identified herself as Defendant's sister and stated that she was just visiting the apartment.

After completing the search of the apartment, the officers reminded Defendant of his constitutional rights and placed him under arrest for additional charges. Defendant stated, "I'm good for all of it, just don't get my sisters involved." The officers then transported Defendant to the South Patrol Division for booking, where Defendant was offered an opportunity to reduce his statements to writing. He elected not to do so.

## III.     DISCUSSION

Defendant specifically enumerates several findings in the Report and Recommendation with which he disagrees, and then goes on to generally state that he objects to the denial of his Motion to Suppress Evidence and Statements. As a result, the Court will review all of the issues raised in this Motion.

### A.    PROBABLE CAUSE TO ARREST DEFENDANT

In his Motion to Suppress Evidence and Statements, Defendant specifically asserts that the officers did not have probable cause to arrest him.  Magistrate Judge Fleissig disagreed, finding that the arrest was lawful.  This Court agrees with the Magistrate Judge's finding.

An arrest can be valid, even without a warrant, if the police had probable cause to arrest the defendant.  *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975).  Probable cause exists where "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense."  *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000) (internal citations omitted).  In determining whether probable cause exists, a court can consider "the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely on the information within the knowledge of the officer on the scene if there is some degree of communication."  *United States v. Morales*, 238 F.3d 952, 954 (8th Cir. 2001) (citing *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993)).  "The police may, based on their law enforcement experience, draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous."  *United States v. Wajda*, 810 F.2d 754, 758 (8th Cir. 1987).

In this case, the officers did not have a warrant when they arrested Defendant.  Thus, for the arrest to be lawful, the officers must have had probable cause to believe that Defendant had committed, or was in the process of committing, an offense.  Based on the evidence presented, it is clear that probable cause existed to arrest Defendant.  The officers had received information from a reliable source that there was a person called "Goldie" who was selling drugs at 3113 Chippewa, Apartment E.  "Goldie" was described as a 5'8" black male with medium build and

braids. Upon conducting surveillance of 3113 Chippewa, Apartment E, the officers observed a man meeting the description of "Goldie" engaging in what appeared to be two drug transactions. The officers were able to apprehend one of the people involved in these transactions, and she confirmed that she had just engaged in a narcotics transaction with a person called "Goldie." Finally, after Defendant had left the apartment and the officers approached him, the officers observed that he was attempting to discard of an object that was on his person. A police officer observing all of this would, without a doubt, have probable cause to believe that Defendant was engaged in some type of narcotics offense.

This Court finds that the officers had probable cause to arrest Defendant and, thus, the arrest was lawful. Furthermore, because the arrest was lawful, neither the statements made by Defendant nor any related evidence will be suppressed as "fruit of the poisonous tree," as requested by Defendant.

### B. SEIZURE OF EVIDENCE

In his Motion to Suppress Evidence and Statements, Defendant generally requests that the Court suppress "any and all evidence." Magistrate Judge Fleissig found that the evidence at issue in this case was properly seized through abandonment and search incident to arrest. This Court agrees.

#### 1. Abandonment

The first evidence at issue is the baggy containing crack cocaine that was discarded by Defendant upon noticing the approaching police officers. The general rule is that police may recover any property that has been abandoned and use it as evidence. *United States v. Simpson*, 439 F.3d 490, 494 (8th Cir. 2006) (citing *Hester v. United States*, 265 U.S. 57, 58 (1924); *United*

7

*States v. Hollman*, 541 F.2d 196, 199 n.8 (8th Cir. 1976)).  The test to determine if property is abandoned is "whether the defendant relinquished his reasonable expectation of privacy over the objects."  *Id.* (citing *United States v. Hoey*, 983 F.2d 890, 892-93 (8th Cir. 1993)).  This is a totality of the circumstances test and courts "typically consider two critical factors - whether the defendant physically relinquished, and denied ownership over, the challenged evidence."  *Id.* (citing *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997)).

Upon seeing the police officer approaching him, Defendant removed an object from his pocket and tossed it on the ground.  By tossing the baggy onto the ground behind him, Defendant clearly physically relinquished it and was attempting to deny ownership of it.  Thus, the Court finds that Defendant relinquished his reasonable expectation of privacy over the baggy.  Moreover, the approach of the officers does not affect Defendant's abandonment of the baggy.  "'The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary.' . . .  However, abandonment cannot be the product of unlawful police conduct."  *United States v. Segars*, 31 F.3d 655, 658 (8th Cir. 1994) (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983)).  In this case, there is no suggestion of police misconduct, rather they acted prudently in identifying themselves while approaching Defendant.  The seizure of the baggy containing crack cocaine was lawful and the evidence is admissible.[3]

---

[3]Even if the baggy were not found to be abandoned, the evidence would be admissible under the plain view doctrine.  This doctrine "allows a police officer to seize evidence without a warrant when (1) 'the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed,' (2) the object's incriminating character is immediately apparent, and (3) the officer has 'a lawful right of access to the object itself.'" *United States v. Hughes*, 940 F.2d 1125, 1126-27 (8th Cir. 1991) (quoting *Horton v. California*, 496 U.S. 128 (1990)).  This doctrine clearly applies to the baggy discarded by Defendant and found

2.  <u>Search Incident to Arrest</u>

Also at issue is the evidence seized from Defendant's person after he was arrested.  "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."  *United States v. Robinson*, 414 U.S. 218, 224 (1973).  "It is the fact of the lawful arrest which establishes the authority to search."  *Id.* at 235.  As already established, the arrest of Defendant was based on probable cause and was lawful.  The search of his person, which resulted in the discovery of evidence, was conducted immediately after Defendant was placed under arrest.  Therefore, the search incident to a lawful arrest exception to the warrant requirement applies and the evidence is fully admissible.

**C.    INCULPATORY STATEMENTS**

In his Motion to Suppress Evidence and Statements, Defendant argues that any statements he made at the time of his arrest should be suppressed because he was not advised of his Miranda rights prior to making the statements.  Magistrate Judge Fleissig found that Defendant's statements are not subject to suppression because they were made following a knowing and voluntary waiver of his rights.  This Court agrees and finds that the statements are admissible.

A person can waive his or her Miranda rights, "[b]ut the waiver must be voluntary, knowing, and intelligent, that is, it must be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007) (quoting *United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir. 1994); *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  In this case, it is clear that Defendant made a voluntary and knowing waiver of his constitutional rights under Miranda.  Upon being placed under arrest, Officer

on the ground in a public area.

Schwerb read Defendant his Miranda rights from a card. Defendant, who did not appear to be under the influence of drugs or alcohol or affected by a mental infirmity of any sort, indicated that he understood his rights. The officers did not threaten Defendant in any way and they did not engage in any force against Defendant in an effort to induce him to make a statement. Additionally, the officers did not make any promises to Defendant in exchange for his statements.[4] Based on the totality of the circumstances, it is clear that Defendant's waiver of his Miranda rights was voluntary, knowing, and intelligent. Therefore, Defendant's statements are fully admissible.

### D.     CONSENT TO SEARCH APARTMENT

Finally, in his Motion to Suppress Evidence and Statements, Defendant argues that any consent given by Ms. Perry to search the apartment was not voluntarily given. He further argues that Ms. Perry did not have authority to consent to a search of the apartment. Magistrate Judge Fleissig found that Ms. Perry did have authority to consent and that her consent was voluntary. This Court agrees and finds that the officers were authorized to search the apartment.

#### 1.     Voluntariness of Consent

The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply where consent to search has been given. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *United States v. Brown*, 345 F.3d 574, 579 (8th Cir. 2003). However, in order to be valid, such consent must be given "freely and voluntarily." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222

---

[4]In fact, several of the statements made by Defendant ("I'm caught, what can I say, can we work something out?" and "I'm good for all of it, just don't get my sisters involved.") appear to have been made completely voluntarily, and not in response to any questioning by the officers. *See, e.g.*, *United States v. Hatten*, 68 F.3d 257, 262 (8th Cir. 1995) ("We have repeatedly held that '[a] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings.'" (quoting *Rhode Island v. Innis*, 446 U.S. 291, 299 (1980)).

(1973). In determining whether a person's consent was given freely and voluntarily, a court must examine the totality of the circumstances. *Id.* at 226. The individual characteristics of the person giving consent that should be considered include:

> (1) the defendant's age; (2) the defendant's general intelligence and education; (3) whether the defendant was under the influence of drugs or alcohol; (4) whether the defendant was informed of his Miranda rights prior to the consent; and (5) whether the defendant had experienced prior arrests so that he was aware of the protections the legal system affords to suspected criminals.

*United States v. Alcantar*, 271 F.3d 731, 737 (8th Cir. 2001). Courts should also consider the environment in which consent was given, specifically:

> whether the person who consented: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

*United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990) (internal citations omitted).

Based on the totality of the circumstances, it is clear that Ms. Perry's consent to search the apartment was given freely and voluntarily. At the time of the incident at issue, Ms. Perry was 26 years of age. She did not appear to be under the influence of alcohol or drugs, nor did she appear to be suffering from a mental infirmity of any kind. The officers had not placed her under arrest or even suggested that they would do so. They did not engage in any force and they did not make any threats or promises in effort to obtain Ms. Perry's consent. Ms. Perry was aware of her right to refuse consent, but she nevertheless elected to sign the form and give the officers her consent to search the apartment. Thus, the Court finds Ms. Perry's consent to have been freely and voluntarily given.

2.    <u>Authority to Consent</u>

In order for a consent to search to be valid, it must be given by a person who has some authority over the premises or the item to be searched. *United States v. Matlock*, 415 U.S. 164, 171 (1974).  However, even if the person giving consent does not have actual authority, consent may still be valid when the police reasonably believed that the person had authority to consent. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990).  Thus, the relevant inquiry, based on an objective standard, is: "'would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Id.* at 188 (alterations in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).

In this case, there is some confusion regarding whether the apartment was Ms. Perry's or whether it was actually the Defendant's.  However, this issue is irrelevant because, prior to the search of the apartment, the officers reasonably believed that Ms. Perry had authority to consent.  Both Defendant and Ms. Perry told the officers that it was her apartment.  Even after the search, when the officers questioned who lived in the apartment, Ms. Perry explained that she slept on the couch and let Defendant sleep in the bedroom.  She did not state that it was not her apartment or make any statements that would so suggest.  Thus, regardless of whether Ms. Perry had actual authority to consent, the officers reasonably believed that it was her apartment and, therefore, that she had authority to consent.

The Court finds that Ms. Perry's consent was voluntarily and freely given and that the officers reasonably believed that she had authority to consent to the search.  Thus, Ms. Perry's consent was valid and the search was legal.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence and

Statements [doc. #17] is **DENIED**.

Dated this <u>2nd</u> Day of <u>June</u>, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE